UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

THOMAS A.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

**DECISION AND ORDER**

6:24-CV-06523 EAW

## INTRODUCTION

Represented by counsel, Plaintiff Thomas A. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 4; Dkt. 10), and Plaintiff's reply (Dkt. 11). For the reasons discussed below, Plaintiff's motion for judgment on the pleadings (Dkt. 4) is granted, the Commissioner's motion for judgment on the pleadings (Dkt. 10) is denied, and the case is remanded for further administrative proceedings.

## BACKGROUND

Plaintiff protectively filed his application for DIB on January 5, 2022. (Dkt. 3 at 652).[1] In his application, Plaintiff alleged disability beginning September 12, 2020, due to severe anxiety, depression, back injury, right shoulder injury, carpal tunnel syndrome, right knee injury, high cholesterol, borderline blood pressure, and insomnia. (*Id.* at 654). Plaintiff's application was initially denied on June 16, 2022. (*Id.* at 685-96). A telephone hearing was held before administrative law judge ("ALJ") Brian Kane on October 12, 2023. (*Id.* at 36-67). On November 24, 2023, the ALJ issued an unfavorable decision. (*Id.* at 19-31). Plaintiff requested Appeals Council review; his request was denied on July 5, 2024, making the ALJ's determination became the Commissioner's final decision. (*Id.* at 5-11). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or

combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id*. § 404.1509, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520. Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act through December 31, 2025. (Dkt. 3 at 24). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since September 12, 2020, the alleged onset date. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of generalized anxiety disorder and carpal tunnel syndrome status-post carpal tunnel release. (*Id.*). The ALJ further found that Plaintiff's medically determinable impairments of arm, shoulder, and back pain were non-severe. (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 25). The ALJ particularly considered the criteria of Listings 1.08, 11.01, and 12.06 in reaching his conclusion. (*Id.* at 25-26).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c), except:

> he can have occasional contact with supervisors, coworkers, and the general public (occasional contact is defined as contact with anyone in that group for up to one-third of a workday).

(*Id.* at 26). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 29).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of industrial cleaner, warehouse worker, and laundry worker I. (*Id.* at 30-31). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 31).

## II. <u>Remand of this Matter for Further Administrative Proceedings is Necessary.</u>

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that the RFC is not supported by substantial evidence. Specifically, Plaintiff argues that the ALJ failed to build an accurate and logical bridge between the evidence and his conclusions, and the mental RFC is not supported by substantial evidence. (Dkt. 4-1 at 13-29). In response, the Commissioner argues that substantial evidence supports the ALJ's RFC finding. (Dkt. 10-1 at 8-23). Because the Court concludes that the ALJ's assessment of the opinion evidence and his formulation of the RFC was deficient, remand is required for further administrative proceedings.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). While an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision," *id.*, an ALJ is not a medical professional, and therefore he "is not qualified to assess a

claimant's RFC on the basis of bare medical findings," *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation and citation omitted).

However, at bottom, "[a]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (finding it was proper for the ALJ "pursuant to his statutory authority . . . [to] consider[ ] the medical and other evidence in the record in its totality to reach an RFC determination"); *see also Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) ("Where . . . the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." (quotations, citations, and alteration omitted)).

In arriving at the RFC, the ALJ's reasoning "must always be sufficiently discernible as to allow a reviewing court to ensure that the ALJ employed the proper standards and rendered a decision supported by substantial evidence." *Gail F. v. Comm'r of Soc. Sec.*, No. 21-CV-120-FPG, 2022 WL 17578465, at *4 (W.D.N.Y. Dec. 12, 2022) (quotations and citation omitted). In other words, an ALJ "must build an accurate and logical bridge from the evidence to his conclusion to enable a meaningful review," and "only when the ALJ does so is the Court in a position to conduct meaningful review as to whether the ALJ's analysis and resulting RFC are supported by substantial evidence." *Dorothy R. v.*

*Comm'r of Soc. Sec.*, No. 21-CV-06174-FPG, 2023 WL 4365371, at *2 (W.D.N.Y. June 15, 2023) (quotations, citations, and alterations omitted).

Here, it is unclear to the Court how the ALJ assessed the RFC. As noted above, while the ALJ is not required to adopt any one medical opinion in formulating the RFC, *Matta*, 508 F. App'x at 56, the ALJ is not permitted to assess the RFC based on bare medical findings, and he is also required to explain why he rejected opinion evidence, *see Kimberly H. v. Comm'r of Soc. Sec.*, 671 F. Supp. 3d 328, 336 (W.D.N.Y. 2023) (ALJ must explain how he considered the opinion evidence in the record); 20 C.F.R. §§ 404.1520c(a)-(c). Here, the ALJ considered two opinions assessing Plaintiff's physical functional limitations, and two opinions assessing Plaintiff's mental functional limitations. The ALJ found each opinion to be "not persuasive as it is inconsistent with the medical evidence." (*See* Dkt. 3 at 29). The ALJ then assessed an RFC for medium work with additional limitations for interacting with others, but provided no meaningful explanation as to how he arrived at the RFC or what evidence he relied on to assess the RFC. (*See, e.g., id.* ("Based on the foregoing, I find the claimant has the above residual functional capacity assessment.")). Further, in the absence of any direct explanation as to how the ALJ assessed the RFC, it is not otherwise clear from the record how the ALJ arrived at the assessed RFC.

The Court turns first to the ALJ's consideration of the opinion evidence assessing Plaintiff's physical functional limitations. With respect to Plaintiff's physical limitations, the ALJ considered the opinion offered by D. Brauer, M.D. and Gregory Zito, M.D., the state agency medical consultants, and the opinion offered by Harbinder Toor, M.D., the

internal consultative examiner. The ALJ first noted Dr. Brauer's and Dr. Zito's opinion that Plaintiff does not have a severe physical impairment. (*Id.*). The ALJ found that the opinion was "not persuasive as it is inconsistent with the medical evidence, including the claimant's history of carpal tunnel syndrome. Moreover, this consultant did not examine the claimant and did not have the benefit of the updated record." (*Id.*).

The ALJ next considered the opinion offered by Dr. Toor, who opined that Plaintiff had moderate limitations for pushing, pulling, lifting, reaching, and twisting of the cervical spine, mild-to-moderate limitations for performing fine motor activities with the hands, and moderate limitations for standing, walking, sitting, squatting, bending, lifting, and carrying. (*Id.*; *see also id.* at 917). The ALJ found Dr. Toor's opinion was "not persuasive" as it was inconsistent with the medical evidence, and because the opinion was not supported by the other evidence in the record, including treatment notes from Plaintiff's physician in May 2022. (*Id.* at 29). The ALJ provided no further explanation for his rejection of Dr. Toor's opinion, including any specific (or general) discussion as to what evidence in the record contradicted specific portions of Dr. Toor's opinion. For example, there is no discussion of records from Plaintiff's physician contradicting Dr. Toor's assessment that Plaintiff's hand and finger dexterity were limited, and that he had moderate limitations for standing, walking, sitting, squatting, bending, lifting, and carrying. *See, e.g., Cole v. Colvin*, No. 6:14-CV-6677(MAT), 2015 WL 9463200, at *5 (W.D.N.Y. Dec. 28, 2015) (remanding case for further administrative proceedings, where "after setting forth Plaintiff's RFC, the ALJ merely summarized some of the medical evidence in the record but did not discuss how the evidence to which she referred supported her conclusion that

Plaintiff can perform a range of medium exertional work"). Accordingly, the Court cannot engage in a meaningful analysis of the ALJ's consideration of the opinion, or how it informed the assessed RFC.

The Court finds the absence of further explanation problematic because Dr. Toor's opinion was supported by an in-person examination of Plaintiff, wherein Dr. Toor observed that Plaintiff had an abnormal, slightly painful gait, could squat only 50 percent due to pain in his knees, had difficulty changing for the examination due to pain in his right shoulder, and had difficulty getting on and off of the examination table and rising from the chair. (Dkt. 3 at 915). Dr. Toor's musculoskeletal examination also showed limited range of motion, and Dr. Toor assessed stiffness in Plaintiff's right knee and right shoulder. (*Id*. at 916). Dr. Toor further assessed that Plaintiff's hand and finger dexterity were not intact, and he had mild-to-moderate difficulty grasping, holding, writing, tying shoelaces, zipping a zipper, buttoning a button, manipulating a coin, or holding objects with the hands. (*Id*.). Again, it is not clear why the ALJ apparently failed to credit these assessed limitations.

The ALJ's assessment of the mental opinion evidence suffers from the same shortcomings. With respect to the assessment of Plaintiff's mental limitations, the ALJ considered the opinions offered by P. Roy-Petrick, Ph.D. and L. Dekeon, Ph.D., the state agency medical consultants, who opined that Plaintiff did not have a severe mental impairment. (*Id*. at 29). The ALJ essentially provided the same explanation as he did for rejecting the opinions offered by Drs. Brauer and Zito—specifically, that the opinion offered by Drs. Roy-Petrick and Dekeon was not persuasive because it was inconsistent

with the medical evidence and Plaintiff's history of generalized anxiety disorder, and the consultants did not examine Plaintiff and did not have the updated record. (*Id.*).

The ALJ also discussed the opinion offered by Allen Brownfeld, Ph.D., who opined that Plaintiff had mild limitations for applying complex directions and instructions, using reason and judgment to make work-related decisions, sustaining concentration and performing a task at a consistent pace, and sustaining an ordinary routine and regular attendance at work, and marked limitations for interacting with supervisors, coworkers, and the public, and for regulating emotions, controlling behavior, and maintaining well-being. (*Id.*; *see also id.* at 923-24). The ALJ noted that Dr. Brownfeld's opinion was not persuasive because it was inconsistent with the medical evidence, and it was not supported by the other evidence in the record, including treatment notes from Plaintiff's physician during May 2022. (*Id.* at 29). The ALJ essentially offered the same reasoning for rejecting Dr. Brownfield's opinion as he did for rejecting Dr. Toor's opinion—in other words, in rejecting both opinions, the ALJ stated only that the opinions were inconsistent with the medical evidence and treatment notes from May 2022. This general, blanket reason for rejecting opinion evidence is not sufficient, and it indicates that the ALJ did not undertake separate consideration of Dr. Toor's and Dr. Brownfeld's opinions.

Like the ALJ's assessment of Dr. Toor's opinion, his failure to engage in a more detailed discussion of Dr. Brownfeld's opinion is problematic because the opinion was supported by a mental status examination, including Dr. Brownfeld's observations that Plaintiff's presentation was poor due to his emotional state, he was tense and trembling due to anxiety, he had poor eye contact and a trembling voice, he was depressed and anxious,

and his attention and concentration were impaired due to emotional distress. (*Id*. at 922-23). Despite that Dr. Brownfeld's opinion was supported by an in-person examination, the ALJ failed to discuss why he did not adopt many of the limitations assessed by Dr. Brownfeld in the RFC. For example, the RFC includes only limitations for interacting with others and fails to incorporate the remaining limitations assessed by Dr. Brownfeld, including the assessed marked limitations for regulating emotions, controlling behavior, and maintaining well-being, and the remaining limitations for applying complex directions, using judgment, sustaining concentration, and sustaining a routine and attendance. The ALJ failed to identify any specific evidence contradicting Dr. Brownfeld's assessment of Plaintiff's mental functioning, nor is it otherwise apparent from the written determination.

Finally, notably absent from the written determination is any explanation of how the ALJ assessed an RFC for medium work or the limitation for occasional contact with others. In other words, not only did the ALJ not adopt any of the opinion evidence in the record, but he also failed to explain how he formulated the physical and mental RFC, leaving the Court with no meaningful way to assess the ALJ's reasoning. Because the Court cannot discern how the ALJ assessed the limitations included in the RFC, remand is required. *See Gail F.*, 2022 WL 17578465, at *5 (remanding case for further administrative proceedings, where "the lack of a discernible rationale for the ALJ's RFC findings prevents the Court from conducting a meaningful review," and "raises the specter that the ALJ arbitrarily constructed the RFC").

For those reasons, this matter is remanded for further administrative proceedings. On remand, the ALJ shall better articulate his reasoning for adopting the assessed RFC,

including by explaining how the evidence in the record has informed the assessed RFC. Further, the ALJ shall more specifically articulate his reasoning for rejecting any medical opinion evidence in the record.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 4) is granted to the extent that the matter is remanded for further administrative proceedings, and the Commissioner's motion for judgment on the pleadings (Dkt. 10) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.



ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: September 24, 2026
Rochester, New York